UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT BAKER, ET AL.                                    CIVIL ACTION

VERSUS                                                       NO. 17-5446

NEWTEK SMALL BUSINESS                           SECTION "R" (2)
FINANCE, LLC


## ORDER AND REASONS

Before the Court is defendant's opposed motion to dismiss.[1]  For the reasons set forth below, the Court grants in part and denies in part the motion.


## I.    BACKGROUND

This action arises from allegedly tortious actions taken by defendant Newtek Small Business Finance, LLC ("Newtek") in collecting a commercial debt.  In 1978, plaintiff Bob Baker founded Baker Sales, Inc. ("BSI"), which provided wholesale distribution of steel pipe, fence pipe, and fence supplies to businesses in southeast Louisiana.[2]  In March 2011, Newtek issued two loans of $1,960,000 and $1,215,000 through a federal Small Business

---

[1]      R. Doc. 47.
[2]      R. Doc. 10 ¶ 15.

Administration ("SBA") program to BSI.[3]  In return for the loans, BSI made two promissory notes payable to Newtek.[4]  Each loan was secured with a conventional mortgage on the real commercial property owned by BSI, known as the Camp Villere Facility, and general security agreements that collateralized all of BSI's movables.[5]  Moreover, plaintiffs Bob Baker and his wife Elsa personally guaranteed the loans, and their guarantees were secured by a conventional mortgage on plaintiffs' home.[6]

In September 2013, BSI filed for Chapter 7 bankruptcy.[7]  Newtek allegedly filed a sworn proof of claim in the bankruptcy proceeding indicating that the BSI notes were 100% secured by Newtek's security interest in BSI's property in the amount of $3,044,569.46.[8]  In December 2013, Bankruptcy Judge Jerry Brown granted Newtek's motion to lift the bankruptcy stay to permit it to foreclose against BSI's assets.[9]  Newtek then filed for executory process in state court, and the state court issued a writ of seizure and sale against BSI's real and movable property.[10]  The Sheriff allegedly sold the

---

[3]     *Id.* ¶ 19.
[4]     *Id.* ¶ 20.
[5]     *Id.* ¶¶ 21-22.
[6]     *Id.* ¶¶ 23-24.
[7]     *Id.* ¶ 26.
[8]     *Id.* ¶ 27.
[9]     *Id.* ¶ 29.
[10]    *Id.* ¶¶ 31-33.

Camp Villere Facility at auction without appraisal in 2014, and Newtek was the highest bidder.[11]   In 2011, the Camp Villere Facility was allegedly appraised at \$2,800,000.00, and Newtek allegedly paid \$81,130.00 for the property at the auction.[12]

A few months after the Sheriff auctioned the Camp Villere Facility, Newtek filed a Uniform Commercial Code ("UCC") financing statement on "Lot 127," an allegedly unimproved lot located adjacent to plaintiffs' home.[13] Plaintiffs allege that Newtek never had any security interest in the lot.[14] Plaintiffs also allege that Newtek took control of BSI's movable property in January 2015, and abandoned some of the property because it was encumbered by a St. Tammany Parish tax lien.[15]   The BSI movables that Newtek abandoned were allegedly sold as part of the bankruptcy proceedings to a third party in July 2015 for \$42,500.00.[16]  Plaintiffs allege that, included within BSI's moveables were BSI's accounts receivable, and that BSI and Newtek never made any agreement concerning the value of the accounts receivable.[17]

---

[11]     *Id.* ¶ 35.
[12]     *Id.* ¶¶ 36-38.
[13]     *Id.* ¶ 39.
[14]     *Id.* ¶¶ 40-42.
[15]     *Id.* ¶¶ 43, 46.
[16]     *Id.* ¶ 48.
[17]     *Id.* ¶¶ 43-44.

Plaintiffs allege that in mid-2015, Newtek first offered plaintiffs a "workout" in lieu of foreclosure on their home.[18]  According to plaintiffs, Newtek persisted in offering workouts throughout 2015 and 2016, despite plaintiffs' counsel's assertion that such collection efforts were prohibited by the Louisiana Deficiency Judgment Act ("LDJA"), since BSI's property was sold without appraisal.[19]  Plaintiffs allege that Newtek represented that the decision whether to foreclose on plaintiffs' home was being made by the SBA, rather than Newtek itself.[20]  Plaintiffs allege that they later learned from the deputy director of the SBA that Newtek's collection efforts were its own, and that these efforts were violative of the SBA's Standard Operating Procedure.[21]

On March 1, 2016, Newtek filed a petition for executory process in Louisiana state court seeking to enforce the plaintiffs' guarantees on BSI's SBA loans by foreclosing on their home and on Lot 127.[22] On March 14, 2016, the state court granted Newtek's petition and directed the Sheriff to seize and sell plaintiffs' home and Lot 127.[23]  The Sheriff effected seizure on both

---

[18]     *Id.* ¶ 51.
[19]     *Id.* ¶¶ 52-55.
[20]     *Id.* ¶ 56.
[21]     *Id.* ¶¶ 73-75.
[22]     *Id.* ¶ 59.
[23]     *Id.* ¶¶ 60-63.

properties on March 17, 2016.[24]   On May 19, 2016, the state court judge ordered the Sheriff's sale canceled based on Newtek's lack of a security interest in Lot 127, but granted Newtek leave to file an amended petition for executory process.[25]

Plaintiffs then filed this action in federal court on June 1, 2017, as the state court foreclosure proceedings remained open, seeking compensatory and punitive damages, attorneys' fees, and costs, and bringing causes of action for wrongful seizure, conversion, abuse of process, unfair and deceptive trade practices under the Louisiana Unfair and Deceptive Trade Practices Act ("LUTPA"), slander of title, breach of contract, and breach of the implied duty of good faith and fair dealing.[26]   In September 2017, plaintiffs filed a notice of voluntary dismissal, citing Federal Rule of Civil Procedure 41(a)(1)(A)(i) and Local Rule 41.1, purporting to dismiss their claim against Newtek under the LUTPA.[27]   In March 2018, Judge Martin Feldman granted in part a motion to dismiss filed by Newtek, and stayed the action pending the resolution of parallel state court proceedings under the

---

[24]   *Id.* ¶ 62.
[25]   *Id.* ¶¶ 65-66.
[26]   R. Doc. 1 ¶¶ 103-38.
[27]   R. Doc. 31.

doctrine of *Colorado River* abstention, "to be reopened upon proper motion, if necessary."[28]

Newtek filed an amended executory petition in state court on June 5, 2017, and the court granted that petition on June 16, 2017.[29] Plaintiffs thereafter filed a motion in that proceeding to enjoin the sale of their home, asserting that the LDJA rendered the debt unenforceable, that Newtek had failed to follow proper procedure, and that Newtek's foreclosure on BSI's real property satisfied the debt.[30] The state court converted the executory proceeding into an ordinary proceeding, and plaintiffs filed a declaratory judgment action in state court seeking a declaration that Newtek had no right to foreclose on plaintiffs' home under the LDJA.[31] Newtek and plaintiffs filed cross-motions for summary judgment, and the trial court denied Newtek's motion and granted plaintiffs', holding that the debt was extinguished under the LDJA and ordering Newtek to cancel the mortgages executed by plaintiffs in their capacities as guarantors.[32]

Newtek appealed the trial court's ruling, and a majority of the Louisiana First Circuit affirmed, holding that the LDJA barred further

---

[28] R. Doc. 40.

[29] R. Doc. 10 ¶ 92.

[30] R. Doc. 37.

[31] R. Docs. 38 & 43.

[32] R. Doc. 43.

attempts to collect on the debt, with Judge Lanier dissenting.  *Newtek Small Bus. Fin., LLC v. Baker*, 342 So. 3d 926, 936 (La. App. 1 Cir. 2022).  Newtek raised five arguments that the Bakers could not assert the LDJA as a defense in the foreclosure action: (1) federal law preempted the LDJA in the case, (2) the Bakers should be prohibited from asserting the LDJA as a defense under judicial estoppel because they failed to raise it in BSI's bankruptcy proceedings, (3) the LDJA did not apply because Newtek did not seek to obtain a deficiency judgment, but rather to foreclose on a mortgage *in rem*, (4) the LDJA did not apply to collection attempts against the Bakers as guarantors of BSI's debt, and (5) exceptions to the LDJA concerning security interests encumbering multiple properties and debt resulting from commercial transactions applied.  *Id.* at 932-36.  The majority addressed each argument and found all of them meritless.  *Id.*

The dissent argued that Newtek was correct that the LDJA did not apply to collection attempts against the Bakers as guarantors because the statute applied only to bar collection efforts against the principal debtor, not against commercial sureties, based on the text of the statute; the Louisiana Supreme Court's decision in *Southland Investment v. Motor Sales Co.*, 5 So. 2d 324 (La. 1941); the law of commercial suretyship in Louisiana; and the reasoning of a law review article, Michael Rubin & Jamie Seymour,

*Deficiency Judgments: A Louisiana Overview*, 69 La. L. Rev. 783 (2009). *Id.* at 936-39.  In *Southland*, the Louisiana Supreme Court held that the LDJA did not apply to bar collection efforts against the commercial sureties in that case, even though it did bar collection efforts against the principal debtor, noting that the LDJA "was enacted for the benefit and protection of the mortgage debtor."  5 So. 2d at 326.

The Louisiana Supreme Court granted a writ of certiorari to determine whether the protections accorded to a principal debtor by the LDJA applied to sureties of the principal debtors, and affirmed the First Circuit's decision with Chief Justice Weimer dissenting.  *Newtek Small Bus. Fin., LLC v. Baker*, 366 So. 3d 1230, 1234-35 (La. 2023).  The majority distinguished *Southland* because that case was "decided under case-specific circumstances wherein the property at issue was sold at a private sale as a result of a workout agreement."  *Id.* at 1233.

The dissent relied largely on the statutory text, the law of commercial suretyship in Louisiana, the reasoning in *Southland*, and the law review article by Rubin and Seymour to find that the LDJA applied only to bar collection efforts against the principal debtor, but did not extinguish the underlying debt.  *Id.* at 1237-38.  The dissent concluded that the matter should have been remanded for an evidentiary hearing to determine the

extent to which the Bakers were prejudiced by Newtek's failure to obtain an appraisal.  *Id.* at 1237.

In December 2023, plaintiffs filed a motion to reopen this federal action, stating that the parallel state court proceedings had concluded, and that they wished to continue pursuing their claims for damages against Newtek.[33]  The Court granted the motion and granted Newtek the opportunity to file a new motion to dismiss under Federal Rule of Civil Procedure 12.[34]  Newtek now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).[35]  Plaintiffs oppose the motion.[36]

The Court considers the motion below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[33]   R. Doc. 43.
[34]   R. Doc. 45.
[35]   R. Doc. 47.
[36]   R. Doc. 53.

the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009).  But the Court is not bound to accept as true legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments.  *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims.  *Id.*  Additionally, the Court may "consider matters of which [it] may take judicial notice."  *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (alteration in original) (quoting *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996) (internal quotation marks omitted)).

## III.   DISCUSSION

### A.   Wrongful Seizure

Newtek argues that plaintiffs' wrongful seizure claims should be dismissed because (1) the allegations relating to the 2016 foreclosure petition

are prescribed, since plaintiffs filed their complaint more than one year after the allegedly wrongful seizure; (2) plaintiffs fail to allege any facts that would satisfy the intent requirement for the cause of action; (3) attorney's fees are not recoverable in a wrongful seizure action under Louisiana law; and (4) plaintiffs' allegations show that they suffered no actual damages as required to state a claim.[37]

### 1.   *Prescription*

Plaintiffs contend that their wrongful seizure claims regarding the 2016 foreclosure petition are timely because prescription begins to run from the time that the seizure is declared wrongful, rather than from the date of the seizure itself.[38]  Newtek contends that even if plaintiffs are correct, their wrongful seizure claim concerning Lot 127 is prescribed because that seizure was declared wrongful on May 19, 2016, when the state trial judge ruled orally on plaintiffs' petition for an injunction halting the sale of the property.[39]

Under Louisiana law, wrongful seizure claims are subject to a one-year prescriptive period.  *Allain v. First Guar. Bank*, 577 So. 2d 1109, 1111 (La.

---

[37]   R. Doc. 47-1 at 10-11; R. Doc. 54 at 1-3.
[38]   R. Doc. 53 at 11-13.
[39]   R. Doc. 54 at 4.

App. 1 Cir. 1991).  "[T]he running of" the prescriptive period "begins not from the date of the illegal seizure, but from the time the rights of the parties are finally determined," or, in other words, "after the final termination of the litigation."  *Hernandez v. Harson*, 111 So. 2d 320, 323 (La. 1958).

Plaintiffs filed the original complaint, including the claims for wrongful seizure, on June 1, 2017.[40]  The wrongful seizure claims in the amended complaint concerning the 2016 foreclosure petition relate back to the date of the original complaint.  *See* Fed. R. Civ. P. 15(c)(1)(B) (amendments relate back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading").  The trial judge's oral ruling from the bench enjoining the sale of the property did not begin the prescriptive period because under the rule announced by the Louisiana Supreme Court in *Hernandez v. Harson*, prescription begins "after the final termination of the litigation."  111 So. 2d at 323.  The litigation concerning the wrongfulness of the 2016 seizure did not terminate until, at the earliest, June 1, 2016, when the state trial court judge issued his written order and judgment enjoining the sale of plaintiffs' home and Lot 127 and finding that Newtek had not

---

[40]    R. Doc. 1.

followed the procedure required by law for an executory proceeding.[41]  Thus, plaintiffs' wrongful seizure claims are not prescribed.  *See Crochet v. Bristol-Meyers Squibb Co.*, 804 F. App'x 249, 252 (5th Cir. 2020) (holding that plaintiff's claims would not be prescribed if filed exactly one year after the date the one-year prescriptive period began to run).

### 2.   *Merits*

To prevail on a wrongful seizure claim, a plaintiff must show that the seizure was illegal, and that "the wrongful seizure was caused by the fault of one who owed a duty to the plaintiff, and that there was a breach of this duty." *Levine v. First Nat. Bank of Com.*, 845 So. 2d 1189, 1193 (La. App. 5 Cir. 2003).  A claim for damages arising from a wrongful seizure is based on negligence principles under Louisiana Civil Code article 2315.  *Taylor v. Hancock Bank of La.*, 665 So. 2d 5, 7 (La. App. 1 Cir. 1995).  Because liability for wrongful seizure is based on the duty/risk analysis, a plaintiff must identify some "law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (quoting *Faucheaux v. Terrebonne Consol. Gov't*, 615 So. 2d 289, 292 (La. 1993)).

---

[41]     R. Doc. 47-13.

Recoverable damages on a wrongful seizure claim include "damages in compensation for embarrassment, humiliation, mental anguish and worry." *Bank of N.Y. Mellon v. Smith*, 71 So. 3d 1034, 1045 (La. App. 3 Cir. 2011), *writ denied*, 75 So. 3d 462 (La. 2011). A plaintiff may state a claim for damages even if the property was seized but not sold, and the plaintiff remained in perpetual possession of the property. *Bank of N.Y. v. Parnell*, 32 So. 3d 877, 896 (La. App. 5 Cir. 2010), *rev'd on other grounds*, 56 So. 3d 160 (La. 2010). A plaintiff "must nevertheless prove that he did sustain damages." *Rao v. Towers Partners, L.L.C.*, 688 So. 2d 709, 712 (La. App. 4 Cir. 1997).

Plaintiffs allege that Newtek breached a duty when it caused the sheriff to seize their home in violation of the LDJA. Under Louisiana law, a creditor seizing property in violation of a statute may be liable for wrongful seizure. *See Dixie Sav. And Loan Ass'n v. Pitre*, 751 So. 2d 911, 921 (La. App. 5 Cir. 1999) (affirming award of damages for wrongful seizure based on violation of executory process statute); *Benoit v. Fleet Finance, Inc.*, 602 So. 2d 182, 186 (La. App. 3 Cir. 1992) (affirming award of damages for wrongful seizure based on violation of statute). The Louisiana Supreme Court held that the LDJA prohibited Newtek from foreclosing on its mortgage on plaintiffs' home by extinguishing the principal obligation. *Baker*, 366 So. 3d at 1234.

14

Accordingly, plaintiffs have adequately alleged that Newtek breached a duty to them when it caused the sheriff to seize their home in violation of the LDJA. *See Gen. Elec. Credit Corp. v. Smigura*, 371 So. 2d 1363, 1365-66 (La. App. 3 Cir. 1979) (noting that a court ruling that a creditor could not seize property amounted to "prima facie evidence of the wrongful issuance of the writ [of seizure]" (quoting *First Nat'l Bank Bldg. Co., Ltd. v. Dickson & Denny*, 13 So. 2d 283, 286 (La. 1943))).

As to Newtek's seizure of Lot 127, plaintiffs adequately allege a breach of duty by defendant irrespective of any statutory violation, as plaintiffs allege that no provision in any agreements between the parties permitted Newtek to seek foreclosure on Lot 127.[42]  Plaintiffs specifically allege that Newtek's mortgage did not cover Lot 127.[43]  Under Louisiana law, a defendant can be liable for wrongful seizure if it initiates seizure proceedings against more property than is covered by its mortgage. *See Dixie Sav. & Loan Ass'n v. Pitre*, 751 So. 2d 911, 922 (La. App. 5 Cir. 1999) (finding defendant liable for wrongful seizure when it "instructed the deputy to proceed with the seizure, knowing it was seizing more than those items in the mortgage"), *writ*

---

[42]    R. Doc. 10 ¶ 109.

[43]    *Id.*

*denied*, 751 So. 2d 855 (La. 1999).  Thus, plaintiffs have adequately alleged that Newtek breached a duty to them in seizing Lot 127.

While plaintiffs do not allege any physical damages arising from the seizures, Louisiana courts have consistently held that a plaintiff may recover even when "the property was never actually sold but only seized." *See Parnell*, 32 So. 3d at 895.  Plaintiffs allege that they suffered humiliation, mortification, mental anxiety, physical discomfort, and inconvenience because Newtek wrongfully seized their home and an adjacent property in the aftermath of the bankruptcy of their business, and they are aged, had no family in the area to assist them, and no prospect of employment to afford another place to live.[44]

Newtek contends that Louisiana law permits recovery for general damages only when the defendant wrongfully seizes property intentionally, citing the Louisiana Supreme Court's statement in *Nassau Realty Co., Inc. v. Brown*, that "[a] party a[g]grieved by the wrongful seizure is entitled to recover . . . general damages . . . caused by this intentional violation of his property rights."  332 So. 2d 206, 210-11 (La. 1976).  The issue of the intent required to recover general damages was not before the court in that case, and the court did not discuss it.  *Id.*  Further, Louisiana courts do not require

---

[44]     *Id.* ¶¶ 108-15.

a plaintiff to demonstrate heightened intent in awarding general damages for wrongful seizure. *See, e.g., Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So. 2d 756, 762 (La. 1985) (affirming general damage award without discussing intent and noting "where property has been wrongfully seized through judicial process, damages for mental anguish and inconvenience due to the loss of use of the property are recoverable"); *Hernandez*, 111 So. 2d at 401-02 (affirming general damage award when there was "no proof of malice [or] . . . harshness," because "it was illegally and wrongfully executed"); *Ford Motor Credit Co. v. Corbello*, 482 So. 2d 203, 205 (La. App. 3 Cir. 1986) (affirming award for general damages and noting that "proof of malice or bad faith is not a prerequisite for recovery of damages for wrongful seizure"). Plaintiffs' allegations permit a reasonable inference that plaintiffs have suffered recoverable damages on their wrongful seizure claims.

Plaintiffs also seek to recover the attorney's fees they incurred as a result of the executory proceedings.  Under Louisiana law, "attorney's fees ordinarily are not recoverable unless specifically authorized by statute or contract."  *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, 772 F.3d 1031, 1036 (5th Cir. 2014).  There is no statute authorizing recovery of attorneys' fees on a wrongful seizure claim in Louisiana, and there is no exception to the general rule for this cause of

17

action. *Gen. Motors Acceptance Corp. v. Meyers*, 385 So. 2d 245, 247 (La. 1980) ("[T]he assessment of attorney's fees as an item of special damages is improper [in a wrongful seizure action.]").  Accordingly, plaintiffs may not recover attorneys' fees on the wrongful seizure claim.

Plaintiffs have stated a claim with respect to the wrongful seizures of their home and of Lot 127, and the motion to dismiss must be denied on these claims.

## B.  Conversion

Newtek contends that plaintiffs' conversion claim must be dismissed because a conversion claim cannot be maintained when the subject of the action is real property, as the cause of action only applies to movable property under Louisiana law.[45]  Plaintiffs concede that the conversion claim should be dismissed, and was properly pleaded as a wrongful seizure claim.[46]

Accordingly, the Court finds that the conversion claim must be dismissed as a matter of law.  *See Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 857 (La. 1998) ("[An] action . . . grounded on the unlawful

---

[45]   R. Doc. 54 at 4.
[46]   R. Doc. 53 at 13.

interference with the ownership or possession of a movable . . . is frequently termed an action for 'conversion' in Louisiana."); *Pure Air Daigle, LLC v. Stagg*, No. 16-01322, 2017 WL 4021047, at *3 (W.D. La. Sept. 6, 2017) ("[O]nly movables may be converted under Louisiana law."); *McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023) ("This circuit's well-settled precedent instructs that a party abandons a claim by failing to defend it in response to motions to dismiss and other dispositive pleadings.").

### C.    Abuse of Process

Newtek argues that plaintiffs' abuse of process claim should be dismissed because (1) plaintiffs cannot show that Newtek lacked a legitimate purpose in seeking foreclosure on the home because it did so based on a good-faith interpretation of the LDJA, even if that interpretation was ultimately incorrect; and (2) plaintiffs suffered no damages since they were never dispossessed of their home.[47]

To prevail on an abuse of process claim under Louisiana law, plaintiffs must show "(1) the existence of an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular prosecution of the

---

[47]    R. Doc. 47-1 at 13-14.

proceeding." *Waguespack, Seago & Carmichael, PLC v. Lincoln*, 768 So. 2d 287, 290-91 (La. App. 1 Cir. 2000).  The central focus of an abuse of process claim is the defendant's intent: "an abuse of process occurs when the actor employs a legal process in a manner that although technically correct, is for a wrongful and malicious purpose to obtain an unjustifiable end or an object that it was not the purpose of the particular process employed to effect." *Foster v. Bias*, 358 So. 3d 520, 536 (La. App. 1 Cir. 2022), *writ denied*, 358 So. 3d 503 (La. 2023).

Here, plaintiffs allege that Newtek's "ulterior purpose" was to "seek a windfall . . . above . . . what it would be owed even if the BSI Notes debt wasn't extinguished."[48]  Plaintiffs factual allegations do not permit a reasonable inference that Newtek acted with this purpose.  *See Iqbal*, 556 U.S. at 379 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint [has not stated a claim.]").

---

[48]  R. Doc. 10 ¶¶ 120.  Plaintiffs' brief in opposition to the motion discusses the standard for evaluating abuse of right claims, and states that Newtek's ulterior purpose was to "extract[] a windfall above and beyond what it's already been paid or recovered."  R. Doc. 53 at 13. Because, in deciding a Rule 12(b)(6) motion, the Court "look[s] to the allegations in the complaint, *Mason v. Integra Peak Mgmt. Inc.*, 821 F. App'x 382, 383 (5th Cir. 2020), to determine whether the pleading meets the requirements of Federal Rule of Civil Procedure 8, the Court analyzes the abuse of process claim as pleaded.  *See Twombly*, 550 U.S. at 557-58.

First, at the time it filed its petition for executory process against the Bakers' home, Newtek had a reasonable basis in law to believe that it could continue its collection efforts against the Bakers, as evidenced by the Louisiana Supreme Court's decision in *Southland*, which interpreted the LDJA and held that the surety obligation in that case survived the extinguishment of the principal obligation by operation of the statute, as well as the statutory language that "the debt . . . shall stand fully satisfied and discharged insofar as it constitutes *a personal obligation of the debtor*." La. Rev. Stat. 13:4106 (emphasis added). The dissenting opinions in the Louisiana Court of Appeal and the Louisiana Supreme Court buttress this conclusion. *See Baker*, 342 So. 3d at 939 (Lanier, J., dissenting); *Baker*, 366 So. 3d at 1235-39 (Weimer, C.J., dissenting). Those opinions relied on the reasoning in *Southland*, a law review article written by a respected Louisiana law scholar, and applicable statutory authority to conclude that the LDJA did not extinguish the Bakers' obligations as commercial sureties. *See Baker*, 342 So. 3d at 939 (Lanier, J., dissenting); *Baker*, 366 So. 3d at 1239 (Weimer, C.J., dissenting). The issue was not settled law until the Louisiana Supreme Court entered its majority opinion.

Second, the premise of plaintiffs' allegation that Newtek's ulterior purpose was to recover more than it was entitled to under the BSI notes is

21

the theory that the BSI collateral would have fully satisfied the debt had it been properly appraised before sale.[49]   Plaintiffs allege no facts that would plausibly support this conclusion.   To reach it would require inferences unsupported by the record.  *See Twombly*, 550 U.S. at 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").  Plaintiffs allege that the total amount due Newtek on the two BSI notes was $3,044,569.46 at the time Newtek foreclosed on the Camp Villere facility.[50]   To begin with, in its bankruptcy petition, BSI valued its total collateral at $2,659,364.80, which is not enough to satisfy the $3,044,569.46 obligation owed to Newtek.[51]  Secondly, according to the Chapter 7 trustee's final report, Newtek recovered only $24,831 from the BSI movables[52] that plaintiffs allege had been valued by St. Tammany Parish at $1,034,707 in

---

[49]   *See* R. Doc. 53 at 13.

[50]   R. Doc. 10 ¶ 27.

[51]   *In re: Baker Sales, Inc.*, No. 13-12693, R. Doc. 1 at 8 (Bankr. E.D. La. 2013).  Generally, in deciding a motion to dismiss under Rule 12(b)(6), the Court "must limit itself to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  But "the district court may [also] consider matters of public record, such as public court filings."  *Riley v. Wells Fargo Bank, N.A.*, 715 F. App'x 413, 414 (5th Cir. 2018) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)); *see also U.S. ex rel Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015) (holding that district court was not required to convert motion to dismiss into summary judgment motion because it considered bankruptcy filings, since the filings were matters of public record).

[52]   *In re: Baker Sales, Inc.*, No. 13-12693, R. Doc. 62 at 9.

2015[53] and that BSI valued at $438,181.80 in its bankruptcy petition.[54]  For plaintiffs' theory to work, they had to allege facts sufficient to reasonably infer that the Camp Villere facility would have sold for virtually $3,000,000 after appraisal.  Plaintiffs allege no plausible facts supporting this speculative conclusion.   Indeed, BSI's bankruptcy petition valued the facility at $2,221,183.[55]

For the foregoing reasons, plaintiffs do not allege sufficient facts to "draw a reasonable inference that" Newtek acted with the ulterior purpose of obtaining a windfall in excess of the amount it was owed under the BSI notes. *See Iqbal*, 556 U.S. at 678.  Accordingly, plaintiffs' abuse of process claims must be dismissed with prejudice.

### D.    LUTPA

Newtek contends that plaintiffs' LUTPA claim should be dismissed even though plaintiffs' voluntary stipulation to dismiss the claim was procedurally improper, because the Court should recharacterize the stipulation as a motion to amend the complaint and grant the

---

[53]    R. Doc. 10 ¶ 47.
[54]    *In re: Baker Sales, Inc.*, No. 13-12693, R. Doc. 1 at 8.
[55]    *Id.*

recharacterized motion.[56]  In the alternative, Newtek argues that plaintiffs'
claim fails on the merits because Newtek is exempt and plaintiffs do not
allege any specific facts indicating that Newtek acted fraudulently or
deceitfully.[57]  Plaintiffs seek to pursue the LUTPA claim, and assert that
because the voluntary stipulation of dismissal was improper, the Court
should disregard it.[58]

   As an initial matter, plaintiff's improper stipulation of dismissal was a
"nullity," and the LUTPA claim remained "pending in the district court" after
the document was filed.  *Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341,
345 (5th Cir. 2020) (quoting *Exxon Corp. v. Maryland Cas. Co.*, 599 F.2d
659, 663 (5th Cir. 1979)).  As the plaintiffs seek to pursue the LUTPA claim,
and the improper stipulation of dismissal was filed in 2017, before Judge
Feldman stayed this action, the Court will not now recharacterize the
stipulation as a motion to amend the complaint.

   The LUTPA provides that "[a]ny person who suffers any ascertainable
loss of money or movable property, corporeal or incorporeal, as a result of
the use or employment by another person of an unfair or deceptive method,
act, or practice . . . , may bring an action . . . to recover actual damages."  La.

---

[56]   R. Doc. 47-1 at 14-15.
[57]   R. Doc. 54 at 5-6.
[58]   R. Doc. 53 at 14-15.

Stat. Ann. § 51:1409(A). "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Boudreaux v. OS Rest. Servs., L.L.C.*, 58 F. Supp. 3d 634, 639 (E.D. La. 2014). Actual damages recoverable under the LUTPA include general damages for mental anguish and humiliation. *Gandhi v. Sonal Furniture and Custom Draperies, L.L.C.*, 192 So. 3d 783, 792 (La. App. 2 Cir. 2015). The statute explicitly exempts "[a]ny federally insured financial institution" from liability under its provisions. La. Rev. Stat. Ann. 51:1406(1).

Plaintiffs assert that Newtek does not qualify as an exempt entity within this context, citing *Levine v. First Nat'l Bank of Commerce*, 917 So. 2d 1235 (La. App. 5 Cir. 2005), a case in which the Louisiana courts concluded that a federally insured mortgagee bank was not exempt under the LUTPA. *Levine* is inapposite because the court in that case was interpreting an old version of the statute, the exemption in that case applied to "any bank chartered by or under the authority of the United States acting under statutory authority of this state or the United States to regulate unfair or deceptive trade practices." La. Rev. Stat. Ann. § 51:1406(1) (effective through August 2006). As of 2006, the exemption has applied to "any federally

insured financial institution," regardless of context.  *Truong v. Bank of America, N.A.*, 717 F.3d 377, 385-86 (5th Cir. 2013) (explicitly rejecting the argument that *Levine*'s reasoning applies to the new statutory language and noting that 2006 amendment "obviously broadens the exemption's application" because "[a]ny federally insured financial institution . . . [is now fully] exempt").  Here, while Newtek issued the BSI loans through a federally administered SBA program, Newtek is not listed in the Federal Deposit Insurance Corporation's register.  Thus, at this stage, it does not appear that Newtek is exempt from the LUTPA.

Nevertheless, plaintiffs do not allege any "immoral, unethical, oppressive, unscrupulous . . . substantially injurious," *Boudreaux*, 58 F. Supp. 3d at 639, or otherwise fraudulent conduct by Newtek.  While Louisiana courts have held that wrongful seizure is an unfair trade practice within the meaning of the LUTPA, *Wilson v. T&T Auto Repair & Towing, LLC*, 180 So. 3d 437, 442 (La. App. 2 Cir. 2015), the plaintiff must still allege conduct that is "immoral, unethical, oppressive, unscrupulous or substantially injurious."  *Id.*; *see also F&M Mafco, Inc. v. Ocean Marine Contractors, LLC*, No. 18-5621, 2019 WL 3306521, at *5 (E.D. La. July 23, 2019) (holding defendant's counterclaim stated a claim under the LUTPA based on wrongful seizure when defendant alleged intentional, continuing

violation of its property rights that rose "to the level of egregious conduct required to state a claim under LUTPA").  Here, as discussed above, Newtek attempted to continue its collection efforts against plaintiffs based on secured guarantee agreements signed by plaintiffs and a reasonable interpretation of the LDJA that a divided Louisiana Supreme Court rejected.  Plaintiffs' allegations do not rise to the level of "egregious conduct."  Accordingly, plaintiffs LUTPA claim must be dismissed with prejudice.

### E.    Slander of Title

Newtek contends that plaintiffs' slander of title claim should be dismissed because Louisiana does not recognize a claim for slander of title, and plaintiffs have failed to state a claim for the analogous cause of action that Louisiana does recognize.[59]

Louisiana recognized a cause of action for slander of title until 1960, when the claim was subsumed into a statutory "possessory action" as part of extensive revisions to the state's procedural and substantive law.  *See* Frank Maraist, 1A La. Civ. L. Treatise § 9.4 (September 2022 Update); *Todd v. State, Through Dep't of Nat. Res.*, 474 So. 2d 430, 435 (La. 1985) ("In 1960 with the adoption of the Louisiana Code of Civil Procedure, the former

---

[59]    R. Doc. 47-1 at 15-16.

jactitory action[,] [a jurisprudentially-created action which subsisted as a way of handling slander of title actions,] was merged with the former possessory action."); La. Code of Civ. P. art. 3659 Official Revision Comments—1960 & 1981 ("The last paragraph makes an important change in the law which in turn makes it possible to merge the former jactitory action into the broadened possessory action.").

To maintain a possessory action, a plaintiff must show (1) he had possession of the immovable property at the time the disturbance occurred; (2) he and his ancestors in title had such possession quietly and without interruption for more than a year prior to the disturbance; (3) the disturbance was one in fact or in law, as defined in Louisiana Code of Civil Procedure article 3659; (4) the possessory action was instituted within a year of the disturbance.  La. Code of Civ. P. art. 3658.  A disturbance in law includes "[t]he execution, recordation, or registry, after the possessor or his ancestors in title acquired the right to possess, of any instrument that asserts or implies a right of ownership or right to the possession of the immovable property or a real right therein."  La. Code of Civ. P. art. 3659(C).

Here, plaintiffs' allegations do not plead the elements of a possessory action.  Because plaintiffs pleaded their claim as one for slander of title, it must be dismissed.  *See Berry v. LoanCity*, No. 18-888, 2019 WL 4455998,

at *7 (M.D. La. Aug. 30, 2019), *report and recommendation adopted*, 2019 WL 4451210 (M.D. La. Sept. 17, 2019) ("Plaintiffs' [slander of title] claim is not a recognized cause of action under Louisiana law, it fails as a matter of law."). Nevertheless, "a party may amend its pleading . . . with . . . the court's leave," and the Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Here, plaintiffs ask to file an amended complaint addressing the deficiencies identified in the complaint if the Court finds the complaint deficient. Plaintiffs may file an amended complaint within twenty (20) days of this Order to remedy the deficiencies identified with this claim. *See Jamison v. Fluor Fed. Sols., L.L.C.*, 787 F. App'x 241, 242 (5th Cir. 2019) (noting that dismissal is appropriate for failure to state a claim when a plaintiff has had the "opportunity to plead his best case").

### F.   Breach of Contract

Newtek contends that plaintiffs' breach of contract claim must be dismissed because plaintiffs fail to identify any specific contractual provision that Newtek breached.[60]  Plaintiffs contend that Newtek had an implied contractual duty to cancel the mortgages recorded in the St. Tammany Parish

---

[60]    R. Doc. 47-1 at 17-18.

mortgage records.[61]   Newtek responds that no provision in any contract required Newtek to cancel the mortgages recorded in the St. Tammany Parish mortgage records.[62]

To state a breach of contract claim, a plaintiff must show: (1) the obligor undertook an obligation to perform, (2) the obligor failed to perform its obligation, (3) the failure to perform resulted in damages to the obligee. *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018).  When "there is an express contract between" parties, there cannot be an implied contract "in reference to the same subject matter."  *Jones v. Adm'rs of Tulane Educ. Fund*, 51 F.4th 101, 111 (5th Cir. 2022) (quoting *Okuarume v. S. Univ. of New Orleans*, 245 So. 3d 1260, 1265 (La. App. 4 Cir. 2018), *writ denied*, 252 So. 3d 927 (La. 2018)).  A plaintiff must also "allege a breach of a specific provision of the contract."  *Spears v. La. Coll.*, No. 20-30522, 2023 WL 2810057, at *5 (5th Cir. Apr. 6, 2023) (quoting *Crescent City Surgical Centre v. Cigna Health & Life Ins. Co.*, No. 18-11385, 2020 WL 1503534, at *2 (E.D. La. Mar. 30, 2020)).

Here, not only do plaintiffs fail to point to any specific contractual provisions that would obligate Newtek to cancel the inscription of the

---

[61]     R. Doc. 53 at 17.
[62]     R. Doc. 47-1 at 17-18.

mortgage against their home upon the extinguishment of the underlying debt, but they also do not identify the governing contract from which they contend this obligation stems. In plaintiffs' complaint, they allege only that Newtek "owed certain contract-based duties" to them, and that one of these duties was to cancel the inscription of the mortgage "upon the extinction of the BSI Notes."[63] In their opposition to the motion to dismiss, plaintiffs locate the source of Newtek's obligation in the general contract relationship between the parties.[64] The "contract relationship" between plaintiffs and Newtek is composed of multiple instruments, including the guarantee agreements, the mortgage documents, and the BSI notes. Not only do plaintiffs fail to cite a contractual provision giving rise to Newtek's duty, but they fail to identify the document in which that provision may be found. Further, the law was not settled that the debt was extinguished until the parties litigated the issue in the Louisiana Supreme Court, and that court issued its judgment and order directing Newtek to cancel the inscription of the mortgage. Because it appears that no contractual provision requires Newtek to cancel the mortgages upon the completion of Newtek's collection efforts against BSI, the breach of contract claim must be dismissed without

---

[63]    R. Doc. 1 ¶¶ 140-41.
[64]    R. Doc. 54 at 17.

leave to amend.  *See Whitney Bank v. SMI Cos. Glob., Inc.*, 949 F.3d 196, 212 (5th Cir. 2020) ("Because no contractual provision governs [defendant]'s conduct, Louisiana law compels that [plaintiff's claims] be brought in tort.").

### G.   Breach of the Implied Duty of Good Faith and Fair Dealing

Newtek contends that the breach of the implied duty of good faith and fair dealing claim should be dismissed because plaintiffs fail to adequately allege a breach of contract claim.[65]

Under Louisiana law, there is no "separate and distinct" cause of action for breach of the obligation to perform a contract in good faith.  *Gulf Coast Bank & Tr. Co. v. Warren*, 125 So. 3d 1211, 1219 (La. App. 4 Cir. 2013).  The question of good or bad faith is relevant in determining the extent of recoverable damages for a breach of contract.  *Id.*  Accordingly, plaintiffs' independent claim for breach of the implied duty of good faith and fair dealing must be dismissed with prejudice.

---

[65]   R. Doc. 47-1 at 18-19.

## IV.   CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.  Plaintiffs' claims for conversion, abuse of process, violation of the LUTPA, breach of contract, and breach of the duty of good faith and fair dealing are DISMISSED WITH PREJUDICE. Defendant's motion to dismiss is DENIED with respect to plaintiffs' wrongful seizure claims.  Plaintiffs' claim for slander of title is DISMISSED WITHOUT PREJUDICE, and plaintiffs may file an amended complaint within 20 days of this Order to remedy the deficiencies identified with respect to that claim.

New Orleans, Louisiana, this ___8th___ day of July, 2024.

_____

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE